(Slip opinion)

# Authority of Individual Members of Congress to Conduct Oversight of the Executive Branch

The constitutional authority to conduct oversight—that is, the authority to make official inquiries into and to conduct investigations of executive branch programs and activities—may be exercised only by each house of Congress or, under existing delegations, by committees and subcommittees (or their chairmen).

Individual members of Congress, including ranking minority members, do not have the authority to conduct oversight in the absence of a specific delegation by a full house, committee, or subcommittee. They may request information from the Executive Branch, which may respond at its discretion, but such requests do not trigger any obligation to accommodate congressional needs and are not legally enforceable through a subpoena or contempt proceedings.

May 1, 2017

LETTER OPINION FOR THE COUNSEL TO THE PRESIDENT

We understand that questions have been raised about the authority of individual members of Congress to conduct oversight of the Executive Branch. As briefly explained below, the constitutional authority to conduct oversight—that is, the authority to make official inquiries into and to conduct investigations of executive branch programs and activities—may be exercised only by each house of Congress or, under existing delegations, by committees and subcommittees (or their chairmen). Individual members of Congress, including ranking minority members, do not have the authority to conduct oversight in the absence of a specific delegation by a full house, committee, or subcommittee. Accordingly, the Executive Branch's longstanding policy has been to engage in the established process for accommodating congressional requests for information only when those requests come from a committee, subcommittee, or chairman authorized to conduct oversight.

The Constitution vests "[a]ll legislative Powers" in "a Congress of the United States, which shall consist of a Senate and House of Representatives." U.S. Const. art. I, § 1. The Supreme Court has recognized that one of those legislative powers is the implicit authority of each house of Congress to gather information in aid of its legislative function. *See McGrain v. Daugherty*, 273 U.S. 135, 174 (1927). Each house may exercise its authority directly—for example, by passing a resolution of inquiry seeking information from the Executive Branch. *See* 4 *Deschler's Precedents of the United States House of Representatives*, ch. 15, § 2, at 30–50

1

(1981) (describing the practice of resolutions of inquiry and providing examples); Floyd M. Riddick & Alan S. Frumin, *Riddick's Senate Procedure*, S. Doc. No. 101-28, at 882 (1992) ("The Senate itself could investigate or hear witnesses as it has on rare occasions[.]").

In modern practice, however, each house typically conducts oversight "through delegations of authority to its committees, which act either through requests by the committee chairman, speaking on behalf of the committee, or through some other action by the committee itself." *Application of Privacy Act Congressional-Disclosure Exception to Disclosures to Ranking Minority Members*, 25 Op. O.L.C. 289, 289 (2001) ("*Application of Privacy Act*"); *see also* Alissa M. Dolan et al., Cong. Research Serv., RL30240, *Congressional Oversight Manual* 65 (Dec. 19, 2014). As the Supreme Court has explained, "[t]he theory of a committee inquiry is that the committee members are serving as the representatives of the parent assembly in collecting information for a legislative purpose" and, in such circumstances, "committees and subcommittees, sometimes one Congressman, are endowed with the full power of the Congress to compel testimony." *Watkins v. United States*, 354 U.S. 178, 200–01 (1957).

By contrast, individual members, including ranking minority members, "generally do not act on behalf of congressional committees." *Application of Privacy Act*, 25 Op. O.L.C. at 289; *see also id.* at 289–90 (concluding that "the Privacy Act's congressional-disclosure exception does not generally apply to disclosures to ranking minority members," because ranking minority members "are not authorized to make committee requests, act as the official recipient of information for a committee, or otherwise act on behalf of a committee"). Under existing congressional rules, those members have not been "endowed with the full power of the Congress" (*Watkins*, 354 U.S. at 201) to conduct oversight. *See Congressional Oversight Manual* at 65; *see also Exxon Corp. v. FTC*, 589 F.2d 582, 593 (D.C. Cir. 1978) ("[D]isclosure of information can only be compelled by authority of Congress, its committees or subcommittees, not solely by individual members; and only for investigations and congressional activities."). Individual members who have not been authorized to conduct oversight are entitled to no more than "the *voluntary* cooperation of agency officials or private persons." *Congressional Oversight Manual* at 65 (emphasis added).

The foregoing reflects the fundamental distinction between constitutionally authorized oversight and other congressional requests for infor-

mation. When a committee, subcommittee, or chairman exercising delegated oversight authority asks for information from the Executive Branch, that request triggers the "implicit constitutional mandate to seek optimal accommodation . . . of the needs of the conflicting branches." *United States v. AT&T Co.*, 567 F.2d 121, 127 (D.C. Cir. 1977); *see also id.* at 130–31 (describing the "[n]egotiation between the two branches" as "a dynamic process affirmatively furthering the constitutional scheme"). Such oversight requests are enforceable by the issuance of a subpoena and the potential for contempt-of-Congress proceedings. *See McGrain*, 273 U.S. at 174; 2 U.S.C. §§ 192, 194; *see also* Standing Rules of the Senate, Rule XXVI(1), S. Doc. No. 113-18, at 31 (2013) (empowering all standing committees to issue subpoenas); Rules of the House of Representatives, 115th Cong., Rule XI, cl. 2(m)(1) (2017) (same). Upon receipt of a properly authorized oversight request, the Executive Branch's longstanding policy has been to engage in the accommodation process by supplying the requested information "to the fullest extent consistent with the constitutional and statutory obligations of the Executive Branch." Memorandum for the Heads of Executive Departments and Agencies from President Ronald Reagan, *Re: Procedures Governing Responses to Congressional Requests for Information* (Nov. 4, 1982). But a letter or inquiry from a member or members of Congress not authorized to conduct oversight is not properly considered an "oversight" request. *See Congressional Oversight Manual* at 56 ("Individual Members, Members not on a committee of jurisdiction, or minority Members of a jurisdictional committee, may, like any person, request agency records. When they do, however, they are not acting pursuant to Congress's constitutional authority to conduct oversight and investigations."). It does not trigger any obligation to accommodate congressional needs and is not legally enforceable through a subpoena or contempt proceedings.

Members who are not committee or subcommittee chairmen sometimes seek information about executive branch programs or activities, whether for legislation, constituent service, or other legitimate purposes (such as Senators' role in providing advice and consent for presidential appointments) in the absence of delegated oversight authority. In those non-oversight contexts, the Executive Branch has historically exercised its discretion in determining whether and how to respond, following a general policy of providing only documents and information that are already public or would be available to the public through the Freedom of Information Act, 5 U.S.C. § 552. Whether it is appropriate to respond to

requests from individual members will depend on the circumstances. In general, agencies have provided information only when doing so would not be overly burdensome and would not interfere with their ability to respond in a timely manner to duly authorized oversight requests. In many instances, such discretionary responses furnish the agency with an opportunity to correct misperceptions or inaccurate factual statements that are the basis for a request.

CURTIS E. GANNON
*Acting Assistant Attorney General*
*Office of Legal Counsel*
